1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIVO INC., a Delaware Corporation, | Case No. |
| Plaintiff, | CASE PENDING IN THE EASTERN DISTRICT OF TEXAS – Civil Action No. 2-04cv01 DF (Judge Folsom) |
| vs. | |
| ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada Corporation; ECHOSTAR DBS CORPORATION, a Colorado Corporation; ECHOSTAR TECHNOLOGIES CORPORATION, a Texas Corporation ;and ECHOSPHERE LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company, | ECHOSTAR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY DIGEO AND MEMORANDUM OF LAW IN SUPPORT |
| | **NOTE ON MOTION CALENDAR: Friday, August 12, 2005** |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Defendants (collectively, "EchoStar") move the Court to enforce a Fed. R. Civ. P. 45 subpoena *duces tecum* against Digeo.  In support of this motion, EchoStar submits a Memorandum of Law, set forth immediately below, and the Declaration of Nancy S. Halpin ("Halpin Decl."), which is filed and served herewith.  For the reasons set forth herein and for good cause shown, the Court should grant EchoStar's motion.

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 1

1

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

2

**A.      INTRODUCTION**

3
4
5
6
7

In a patent infringement action in the Eastern District of Texas, *TiVo v. EchoStar*, Civil Action No. 2-04cv01 DF (Judge Folsom), EchoStar issued a subpoena to third-party Digeo on March 23, 2005.  Digeo licenses digital video recording ("DVR") technology, the technology at issue in the underlying suit.  Four months have passed since issuance of the subpoena and Digeo has now produced <u>some</u> documents.

8
9
10
11
12
13
14
15
16

Digeo is still withholding a group of documents that are among the most critical sought by EchoStar:  license agreements between Digeo and four other companies that Digeo only saw fit to mention for the first time on July 22, 2005.  These license agreements are necessary for EchoStar's damages theory in the underlying case, and there is no dispute over their relevance.  Digeo maintains, however, that it will not produce the agreements without permission from the other parties to the licenses because of a putative confidentiality clause in the agreements.  Confidentiality concerns do not trump the Federal Rules of Civil Procedure and resisting a subpoena is inappropriate.  The detailed protective order in the underlying litigation—which third parties can invoke—will protect Digeo's information.

17
18
19

Trial is set for October 4 and expert reports are due on August 1.  EchoStar can wait no longer.  EchoStar respectfully requests an Order compelling Digeo to produce the four license agreements, subject to the protective order already in place.

20

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

21

**A.      Background of Underlying Patent Infringement Action.**

22
23
24

EchoStar, through the DISH Network, is a leading provider of direct broadcast satellite programming services in the United States.  Halpin Decl. ¶ 2.  In addition to its subscription satellite services, EchoStar sells and leases several set-top boxes, which contain a DVR that

25

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  permits the user to digitally record television programming, pause live television

2  programming, and play back the recorded television programming. *Id.* ¶¶ 3-4. TiVo has

3  developed a subscription-based personal television service that provides viewers with the

4  ability to pause, rewind, and playback live television programs. *Id.* ¶ 5. It designs and licenses

5  technology for the manufacture of its own DVR products. *Id.*

6        On January 15, 2004, TiVo filed an amended complaint in U.S. District Court for the

7  Eastern District of Texas, alleging that EchoStar's set-top box receivers with a DVR infringe

8  TiVo's U.S. Patent No. 6,233,389 (the "'389 patent"). *Id.* ¶¶ 6, 8. As discovery commenced,

9  the court issued a protective order on February 7, 2005 that applies to all discovery, including

10  discovery by third parties. Halpin Decl. ¶ 9 and Ex. C thereto (Protective Order). Thirteen

11  third parties, in fact, have produced confidential documents subject to this protective order. *Id.*

12  ¶ 18.

13        The case is now in its final stages. EchoStar's expert reports are due on August 1,

14  2005, and jury selection begins on October 4. *Id.* ¶ 8.

15  **B.**     **Echostar's Subpoena and Digeo's Response**

16        On March 23, 2005, EchoStar served a Rule 45 subpoena on Digeo. *Id.* ¶ 10 and Ex. D

17  thereto (Digeo Subpoena). The subpoena included document requests seeking various

18  categories of documents relevant to the underlying patent infringement action between TiVo

19  and EchoStar. *Id.*, Ex. D (Digeo Subpoena). Document Request No. 1 in the subpoena

20  specifically requests:

21         All documents and things constituting, referring, or relating to the licensing or
22         negotiations to license . . . any service or technology (whether or not owned by
        TiVo) related to the recording or playback of time-delayed television viewing.

23  Halpin Decl., Ex. D (Digeo Subpoena).

24

25

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    In April, Digeo responded and offered EchoStar the opportunity to review a partial set

2    of its responsive documents at Digeo's counsel's office.  *Id.* ¶11.  Digeo stated that not all

3    documents were available for review.  EchoStar accepted Digeo's offer to review documents at

4    Digeo's counsel's office, but stated that it preferred to wait until Digeo had gathered all of its

5    documents.  *Id.*, Ex. F (June 6, 2005 Letter J. Rossman to A. Citrin).  Digeo never informed

6    EchoStar that the documents were all collected.  As time was moving quickly and EchoStar's

7    need for discovery was growing more urgent, EchoStar agreed to review whatever documents

8    Digeo had collected on June 17, 2005.  Halpin Decl., Ex. G (June 16, 2005 Letter J. Rossman

9    to A. Citrin).

10    On June 17, EchoStar reviewed the Digeo documents and noticed that <u>no license</u>

11    <u>agreements had been provided</u>.  *Id.* ¶ 13.  EchoStar asked if Digeo had license agreements, and

12    specifically inquired about agreements with two companies—Charter and Motorola, Inc.

13    ("Motorola")—based on references to those companies in the documents EchoStar had been

14    allowed to review.  *Id.*  Digeo's counsel professed that it did not know that EchoStar wanted

15    license agreements, and stated that it would check to see with whom Digeo had license

16    agreements.  *Id.*

17    On June 30, 2005, after EchoStar again requested this information, Digeo informed

18    EchoStar of only two parties with whom it had licensing agreements:  Charter and Motorola.

19    *Id.* ¶ 14.  When EchoStar inquired about other companies with which Digeo had agreements—

20    if any—it was told that Digeo's counsel would look into this.  *Id.* ¶ 14.  In a letter from Digeo

21    dated July 19, 2005, Digeo stated that it "will provide license agreements."  And in a

22    subsequent letter dated July 20, 2005, Digeo stated that it "has, however, already agreed to

23    produce the agreements."  Halpin Decl. Exs. H and I (Letters J. Rossman to N. Halpin on July

24    19 and 20, 2005, respectively).  Digeo obtained consent from Charter to produce the

25

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 4

1    Digeo/Charter license, and EchoStar obtained consent from Motorola for Digeo to produce the

2    Digeo/Motorola license on July 22, 2005.[1]  Halpin Decl. ¶ 16.

3        Finally, on Friday July 22, 2005—35 days after EchoStar expressly asked—Digeo first

4    mentioned that it had <u>five license agreements</u> with parties other than Charter and Motorola.

5    *Id.* ¶ 17.  As of July 25, 2005 Digeo could not confirm that it had even contacted Adelphia,

6    Sunflower Broadband, BendBroadband, Comcast, or New Wave Communications to see if

7    those entities had any objection to Digeo's production of the licenses.  *Id.*  Although it has now

8    allegedly made some contacts with its licensees, Digeo has yet to produce four of the licenses.

9    *Id.*

10        These remaining agreements would be produced under the protective order's

11    designation "Confidential-Attorneys Eyes Only." *Id.* ¶ 9.  There is no reason to withhold them.

12    Digeo's late efforts, while a step in the right direction, are no guarantee that Digeo will

13    ultimately produce the agreements, or produce them in a timely manner.  Now that the case is

14    on the brink of critical deadlines, and after working with Digeo patiently for months, EchoStar

15    no longer has the luxury to wait any longer for documents that should have been produced by

16    Digeo some time ago.  The Court should, therefore, order Digeo to produce all remaining

17    agreements immediately.

18                                **ARGUMENT**

19        Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas to

20    third parties.  Where a third party objects to producing documents in response to a subpoena,

21    the party who served the subpoena may "move at any time for an order to compel the

22    production." Fed. R. Civ. P. 45(c)(2)(B).  Additionally, if a subpoena seeks the disclosure of

23    confidential information, the court may then order the production of such materials "upon

24

25    _____

[1] These agreements have now been produced to EchoStar under the protective order in this case.  *Id.* ¶ 16.

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 5

1    specified conditions" where "the party in whose behalf the subpoena is issued shows a

2    substantial need for the . . . material that cannot be otherwise met without undue hardship."

3    Fed. R. Civ. P. 45(c)(3)(B)(iii).

4    **A.    EchoStar Has A Substantial Need For The License Agreements.**

5            A patent owner may be entitled to damages measured by a reasonable royalty if it

6    proves infringement. 35 U.S.C. § 284. In calculating a reasonable royalty, a hypothetical

7    license negotiation is postulated between a licensor and licensee at the time the alleged

8    infringement commenced. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580

9    (Fed. Cir. 1989). Courts frequently employ the so-called *Georgia-Pacific* factors, which

10   include the rates paid by the licensee for the use of other patents comparable to the patent in

11   suit. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003).

12           The Digeo license agreements are necessary and relevant in the underlying case for this

13   hypothetical negotiation analysis. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1577 (Fed. Cir.

14   1995). Because these license agreements relate to DVR technology—the technology at issue

15   in the underlying litigation—the royalties paid under the license agreements will be crucial in

16   determining the reasonable royalty rate to be applied, if any. *Id.*; *see also P&G Co. v. Paragon*

17   *Trade Brands*, 989 F. Supp. 547, 607-8 (D. Del. 1997) (the *Georgia-Pacific* factors "presume[]

18   that a willing licensor and licensee would be guided to some degree *by the royalty rates and*

19   *bases of licenses on comparable patents in the industry*") (emphasis added); *Chisum on*

20   *Patents* § 20.03 [3][b][ii] ("[c]ourts give weight to the licensing customs in the industry and

21   *actual licenses on comparable patents* in determining both the royalty rate and the base for the

22   reasonable royalty") (emphasis added). The relevancy of the license agreements is not in

23   question and Digeo claims it is willing to produce them. Yet EchoStar has still been unable to

24   obtain them.

25

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 6

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

**B.      The Protective Order In The Case Adequately Protects the Confidential Information in the Agreements.**

Digeo's only objection to the production of the license agreements is the confidentiality obligations that they allegedly impose. Halpin Decl., Ex. H, (July 19 Letter J. Rossman to N. Halpin.) However, Digeo and its licensees simply cannot contract around the discovery rules that govern civil litigation in federal courts. "The fact that material otherwise properly sought is 'confidential' . . . is not itself a bar to discovery. The proper approach to a claim of confidentiality is to permit discovery, . . . but to enter an appropriate protective order under F[ed]. R. Civ. P. 26(c) in order to prevent improper disclosure." *Dart Drug Corp. v. Corning Glass Works*, 780 F. Supp 1091, 1106 (D. Md. 1979) (citations omitted). *Accord Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (ordering compliance with subpoena despite confidentiality concerns because protective order provided adequate protection). The U.S. Supreme Court has even weighed in on this issue, stating that "orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel, or to the parties." *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 363 n.24 (1979) (citations omitted). That is precisely what should happen here.

The protective order in *TiVo v. EchoStar* adequately protects any confidential information. The protective order applies to both parties and non-parties, and allows any designating party to limit disclosure to outside counsel and experts/consultants who agree to abide by it. Halpin Decl., Ex. C (Protective Order). Digeo can produce its licenses subject to the protective order, as thirteen third parties have done already. *Id.* ¶ 18. Neither Digeo nor its licensees will be harmed by Digeo's production of the agreements. *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) (an order limiting disclosure of

ECHOSTAR'S MOTION TO COMPEL
PRODUCTION OF DOCS FROM THIRD PARTY
DIGEO AND MEM. OF LAW IN SUPPORT - 7

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   confidential trade information to counsel adequately protects against disclosure to

2   competitors).

3                               **CONCLUSION**

4          For the reasons set forth above, the Court should enter an order compelling Digeo to

5   produce the Adelphia, BendBroadband, Comcast, and New Wave Communications license

6   agreements subject to the terms of the existing protective order.

7          Dated:  July 28, 2005

8                               DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

9

10                              By: _____

11                                  Timothy G. Leyh, WSBA #14853
                                    Randall Thomsen, WSBA #25310

12                              Attorneys for Defendants ECHOSTAR

13                              COMMUNICATIONS CORPORATION, ECHOSTAR
                                DBS CORPORATION, ECHOSTAR TECHNOLOGIES
14                              CORPORATION and ECHOSPHERE LIMITED
                                LIABILITY COMPANY

15

16

17

18

19

20

21

22

23

24

25

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717